UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

JAMIE A. NAUGHRIGHT,

                    Plaintiff,                  10 Civ. 8451

   -against-                                  OPINION

DONNA KARAN WEISS, URBAN ZEN, LLC,
STEPHEN M. ROBBINS, JOHN DOES 1-25,

                    Defendants.

------------------------------------------X

A P P E A R A N C E S:



    Pro Se

    Jamie A. Naughright
    1627 Sherwood Lakes Blvd.
    Lakeland, FL  33809


    Attorneys for Defendants
    Donna Karan Weiss and Urban Zen, LLC

    GORDON & SILBER, P.C.
    355 Lexington Avenue, 7th Floor
    New York, NY  10017-6603
    By:  Laura E. Rodgers, Esq.

    Attorneys for Defendant
    Stephen M. Robbins

    GRANT RICHMAN, PLLC
    Libert Building Rt. 9W
    Stony Point, NY  10980
    By:  Howard S. Richman, Esq.

**Sweet, D.J.**

Defendants Donna Karan Weiss ("Karan") and Urban Zen, LLC ("Urban Zen") (collectively, the "Karan Defendants") have filed a motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Amended Complaint (the "Amended Complaint") filed by Plaintiff Jamie A. Naughright ("Naughright" or the "Plaintiff"). Defendant Stephen M. Robbins ("Robbins" and, collectively with the Karan Defendants, the "Defendants") has also filed a motion to dismiss pursuant to the same rule. Based on the conclusions set forth below, the motions to dismiss are granted in part and denied in part.

## Prior Proceedings

Naughright, a resident of Florida, filed her initial complaint against the Karan Defendants, who are domiciled in New York, and Robbins, who is a California resident, in the Southern District of New York on November 8, 2010. Both the Karan Defendants and Robbins moved to dismiss Naughright's complaint pursuant to Fed. R. Civ. P. 12(b)(6). On November 18, 2011, the Court granted the Defendants' motions to dismiss, allowing Naughright twenty days to replead. On December 9, 2011, Naughright filed her Amended Complaint, which alleges six causes

1

of action characterized as (1) negligent misrepresentation against the Karan Defendants, (2) negligence against Robbins; (3) fraud against Robbins, (4) medical malpractice against Robbins, (5) battery against Robbins and (6) failure to obtain consent against Robbins, all arising out of treatment rendered to Naughright by Robbins on November 9, 2009 which is alleged to have resulted in physical injury.

On January 10, the Karan Defendants filed their motion to dismiss the Amended Complaint.  Robbins attempted to file his motion to dismiss on January 10, but his filing was rejected by the Court's electronic case filing system.  Robbins successfully filed his motion to dismiss on January 11.[1]  The motions were marked fully submitted on February 22, 2012.

---

[1]    On December 14, the Karan Defendants requested that all defendants be afforded an extension of time from December 27 to January 10 to answer or otherwise respond to the Amended Complaint.  The Court granted the request on December 21.  In a letter to the Court, Naughright has contended that Robbins' response was due on December 27 and, in any event, his filing was not complete until January 11.  However, the Karan Defendants' letter states that the request was "submitted on behalf of all defendants," thereby establishing January 10 as the deadline for Robbins' response.  The Court's docket demonstrates that Robbins' counsel attempted to file his motion on January 10, and email traffic provided by Robbins demonstrates that his counsel emailed Naughright copies of Robbins motion to dismiss, affirmation in support thereof and memorandum of law in support of the motion on January 10.  Because Naughright received Robbins' materials in a timely fashion, she was in no way prejudiced by the ECF filing error.  The Plaintiff has raised other objections concerning the

**The Amended Complaint**

The Amended Complaint contains the following facts, which are assumed to be true in the context of deciding the pending motions to dismiss.

The Plaintiff is domiciled in Florida, while the Karan Defendants are domiciled in New York and Robbins is domiciled in California.  Karan is the owner of premises located at 55 Central Park West in New York City, and she uses these premises to promote and conduct her business, Urban Zen.  Karan, either herself or through Urban Zen, contracted with Robbins to provide "healing services" to individuals identified by Karan and Urban Zen as market leaders and decision-makers as part of a marketing strategy in the hope of benefiting Urban Zen's business.  From 2007 through 2010, Naughright was under contract with Urban Zen to serve as director of its Urban Zen Integrative Therapist program ("UZIT"), and her duties included developing and implementing a curriculum that could achieve national accreditation status using four modalities, including yoga. Accreditation would require working with licensed physicians,

---

timeliness of the Defendants' submissions.  However, the Defendants' submissions are timely under Local Rule 6.1.

and the Karan Defendants reached out to Beth Israel Medical Center and various physicians.  Although Naughright was charged with developing the curriculum, the Karan Defendants alone assumed the role of selecting and screening the physician candidates for affiliation with UZIT.

In 2009, the Karan Defendants decided to host a promotional and educational event for UZIT which they called the "New York Healing Weekend."  The event, which would take place on November 7 and 8 of 2009, included events that were to take place at Stephan Weiss Studios as well as at 55 Central Park West.  In late October 2009, Karan informed Naughright that she had been treated in California by a talented healer, Robbins, and that she wanted this healer brought into the UZIT program and incorporated into the New York Healing Weekend.  Karan and Rachel Golstein, an employee of Urban Zen, described Robbins as a "great healer" who was associated with the medical schools at UCLA and USC.  The Karan Defendants led Naughright to believe that Robbins was a licensed physician who, like the licensed doctors already affiliated with the UZIT program, promoted the idea that western medicine can be improved and accentuated by integrating it with eastern treatment philosophy.  In reality, Robbins was not a licensed physician or healthcare provider, and he has not held a medical license for several years.

4

According to the Plaintiff, Karan knew that Naughright, because of her role as the developer of the curriculum, would have objected to Robbins' participation in the promotional weekend event had she known that Robbins was unlicensed.  The Amended Complaint alleges that Karan, and others acting on Urban Zen's behalf, misled Naughright into believing that Robbins was credentialed.  Karan invited Robbins to attend the UZIT event and directed Urban Zen staff to incorporate his work and lecture into the New York Healing Weekend.  On November 6, 2009, Karan invited Robbins to attend an event for the UZIT program and continued to promote him as a healer who was affiliated with medical schools and qualified to be involved in the UZIT program.  On November 7, 2009, Naughright, under instruction from Karan, attended a lunch with Robbins, UZIT administrators, staff and faculty and listened to a lecture Robbins delivered.  At the lecture, Robbins stated that he was associated with UCLA Medical Center and USC Medical Center and that he provided services to the Los Angeles Police Department.  Robbins also stated that he was, or soon would be, affiliated with Beth Israel Medical Center in New York City.

On November 8, 2009, Naughright went to Karan's apartment to attend some of the New York Healing Weekend events

5

and, upon arrival, was informed by Rachel Goldstein

("Goldstein"), an Urban Zen employee, that Robbins' treatments

were behind schedule.  Notwithstanding Goldstein's request that

she stay at 55 Central Park West, Naughright decided to return

to Stephan Weiss Studios to continue her participation in the

New York Healing Weekend events there.  Upon arriving at Stephen

Weiss Studios, Naughright received a telephone call from Karan

who insisted that Naughright return to Karan's apartment

immediately to be treated by Robbins.  Naughright returned to 55

Central Park West.

          When Naughright arrived at the apartment, Karan

emerged from a bedroom, greeted Naughright, raved about Robbins'

healing abilities and informed Naughright that she would be

treated by him.  Karan led Naughright into her bedroom where a

massage table had been set up and then left the room, leaving

Naughright, Robbins and Robbins' wife alone in the room.

Robbins did not ask for any medical background from Naughright

nor did he present her with any consent forms.  According to the

Amended Complaint, Robbins' treatment included applying traction

to Naughright's neck, following by violent shaking of her head

repeatedly from side to side.  Robbins held Naughright's

forehead down and pulled on her jaw.  He also placed an ungloved

hand adorned by a large ring inside Naughright's mouth and then

6

shook Naughright's head.  While Robbins' hand was in
Naughright's mouth, Robbins informed Naughright that she needed
to "let go" because she had control issues.  Robbins then
offered to massage Naughright's breasts and declared that
Naughright's left breast was dead.  Robbins suggested that
Naughright needed a "vagina release" procedure.  Naughright
refused these treatments.

The Amended Complaint alleges that Robbins' treatment
caused serious and permanent injury to Naughright, including the
rupture of a cervical disk in her neck causing multiple bulging
discs, stenosis and a mid-thoracic herniated disc.  Robbins also
fractured and dislocated Naughright's jaw, causing damage to her
hearing and balance, and the treatments caused a spinal fusion
which has required a bone graft in Naughright's neck.  As a
result of these injuries, Naughright has had to undergo
surgeries and diagnostic procedures, and she has been diagnosed
with thoracic outlet syndrome and double crush syndrome.
Naughright was unable to drive a car for more than a year, was
unable to perform daily tasks and was unable to return to her
employment.  Although Naughright has regained some function, she
is physically unable to pursue her profession as an athletic
trainer and continues to have debilitating pain and discomfort.

7

Naughright's Amended Complaint contains six causes of action: (1) negligent misrepresentation against the Karan Defendants; (2) negligence against Robbins; (3) fraud against Robbins; (4) medical malpractice against Robbins; (5) battery against Robbins; and (6) failure to obtain consent against Robbins.

## The Rule 12(b)(6) Standard

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1174 (2d Cir. 1993).  "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims . . .'" <u>Villager Pond, Inc. v. Town of Darien</u>, 56 F.3d 375, 378 (2d Cir. 1995).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929

(2007)).  Plaintiffs must allege sufficient facts to "nudge[]
their claims across the line from conceivable to plausible . . .
."  Twombly, 550 U.S. at 570.  Though the Court must accept the
factual allegations of a complaint as true, it is "'not bound to
accept as true a legal conclusion couched as a factual
allegation.'"  Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550
U.S. at 555).

When presented with a motion to dismiss pursuant to
Rule 12(b)(6), the Court may consider documents that are
referenced in the complaint, documents that the plaintiff relied
on in bringing suit and that are either in the plaintiff's
possession or that the plaintiff knew of and relied on when
bringing suit, or matters of which judicial notice may be taken.
See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir.
2002); Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir.
2002).  "If, on a motion under Rule 12(b)(6) . . . matters
outside the pleadings are presented to and not excluded by the
court, the motion must be treated as one for summary judgment
under Rule 56."  Fed. R. Civ. P. 12(d).

In addressing the present motions, the Court is
mindful that Naughright is proceeding pro se and that her
submissions are held to "less stringent standards than formal

9

pleadings drafted by lawyers . . . ."  Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The courts "construe the pleadings of a pro se plaintiff liberally and interpret them to raise the strongest arguments they suggest."  Fuller v. Armstrong, 204 Fed. Appx. 987, 988 (2d Cir. 2006); see also Lerman v. Bd. of Elections in City of N.Y., 232 F.3d 135, 139-40 (2d Cir. 2000) ("Since most pro se plaintiffs lack familiarity with the formalities of pleading requirements, we must construe pro se complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel.").  However, the courts will not "excuse frivolous or vexatious filings by pro se litigants," Iwachiw v. N.Y. State Dep't of Motor Vehicles, 396 F.3d 525, 529 n.1 (2d Cir. 2005), and "pro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'"  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

**The Defendants' Motions To Dismiss Are Granted In Part And Denied In Part**

As noted above, Naughright's Amended Complaint contains six causes of action: (1) negligent misrepresentation against the Karan Defendants; (2) negligence against Robbins; (3) fraud against Robbins; (4) medical malpractice against Robbins; (5) battery against Robbins; and (6) failure to obtain consent against Robbins. Each of these causes of action will be addressed in turn.

## A. The Negligent Misrepresentation Claim Against The Karan Defendants Is Dismissed

The elements of negligent misrepresentation are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment. Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000) (citing King v. Crossland Savs. Bank, 111 F.3d 251, 257-58 (2d Cir. 1997)). Moreover, "[n]egligent misrepresentation is a type of fraud and, as such, is subject to Rule 9(b)'s heightened pleading standard." Maalouf v. Salomon

11

Smith Barney, Inc., No. 02 Civ. 4770(SAS), 2003 WL 1858153, at
*4 (S.D.N.Y. Apr. 10, 2003) (citing Simon v. Catello, 172 F.R.D.
103, 105 (S.D.N.Y. 1997)).

     "A plaintiff may not recover for negligent
misrepresentation unless 'the author is bound by some relation
of duty, arising out of contract or otherwise, to act with care
if he acts at all . . .'" Durante Bros. & Sons, Inc. v. Flushing
Nat'l Bank, 755 F.2d 239, 252 (2d Cir. 1985) (quoting White v.
Guarente, 43 N.Y.2d 356, 362-63, 401 N.Y.S.2d 474, 372 N.E.2d
375 (1977)). To allege a special relationship, Naughright must
establish something beyond an ordinary arm's length transaction
where "defendants initiated contact with plaintiffs, induced
them to forbear from performing their due diligence, and
repeatedly vouched for the veracity of the allegedly deceptive
information." Eternity Global Master Fund Ltd. V. Morgan Guar.
Trust Co., 375 F.3d 168, 188 (2d Cir. 2004); see also Dandong v.
Pinnacle Performance Ltd., No. 10 Civ. 8086(LBS), 2011 WL
5170293, at *15 (S.D.N.Y. Oct. 31, 2011). "[D]etermination of
whether a special relationship exists is highly fact-specific
and generally not susceptible to resolution at the pleadings
stage." Century Pac., Inc. v. Hilton Hotels Corp., No. 03 Civ.
8258(SAS), 2004 WL 868211, at *8 (S.D.N.Y. Apr. 21, 2004)
(internal citation and quotation marks omitted).

                              12

Because the Amended Complaint fails to plead either the existence of a special duty or reasonable reliance, the Plaintiff's negligent misrepresentation claim against the Karan Defendants fails.  With respect to the existence of a special relationship, the Amended Complaint alleges that Naughright was an employee of the Karan Defendants, that Naughright returned to Karan's apartment to receive Robbins' treatment because she was "[f]earful of being seen as insubordinate," and that "[f]rom 2007 through 2010, Naughright was under contract with Urban Zen to serve as director of its Urban Zen Integrative Therapist program ("UZIT").  Naughright was contracted to develop and implement curriculum that could achieve national accreditation status using four modalities, one of which was yoga."  The Amended Complaint also states that "Naughright was under contract with Urban Zen," "Karan Weiss directly supervised Naughright's performance under the contract" and "Karan Weiss occupied a special position of confidence and trust with Naughright."

A court is "not bound to accept as true a legal conclusion couched as a factual allegation," Twombly, 550 U.S. at 555, and courts are free to disregard legal conclusions, deductions and opinions or a mere "formulaic recitation of the

13

elements of a cause of action." Arar v. Ashcroft, 585 F.3d 559,
594 (2d Cir. 2009). An "employer/employee relationship does not
import a fiduciary duty under New York law[.]" Gaugaix v.
Laboratories Esthederm USA, Inc., No. 98 Civ. 4465(LMM), 2000 WL
1528212, at *8 (S.D.N.Y. Oct. 16, 2000) (citing Serow v. Xerox
Corp., 166 A.D.2d 917, 917, 560 N.Y.S.2d 575 (4th Dep't 1990));
see also Kwon v. Yun, 606 F. Supp. 2d 344, 356 (S.D.N.Y. 2009)
("As courts have routinely held that the employer-employee
relationship does not constitute a special relationship
sufficient to support a claim for negligent misrepresentation,
plaintiff's negligent misrepresentation claim is not viable as a
matter of law.") (citing Stewart v. Jackson & Nash, 976 F.2d 86,
90 (2d Cir. 1992); Cannon v. Douglas Elliman, LLC, No. 06 Civ.
7092(NRB), 2007 WL 4358456, at *10-11 (S.D.N.Y. Dec. 10, 2007);
Onanuga v. Pfizer, Inc., No. 03 Civ. 5405(CM), 2003 WL 22670842,
at *3 (S.D.N.Y. Nov. 7, 2003); Metzler v. Harris Corp., No. 00
Civ. 5847(HB), 2001 WL 194911, at *2 (S.D.N.Y. Feb. 26, 2001)).
Although the Amended Complaint establishes that Naughright
reposed trust in the Karan Defendants, a fiduciary relationship
cannot be formed merely by a plaintiff's subjective decision to
repose trust in the defendant. See SNS Bank, N.V. v. Citibank,
7 A.D.3d 352, 355-56, 777 N.Y.S.2d 62 (1st Dep't 2004).

The Amended Complaint alleges that Karan had specialized expertise because "she was in the position of recruiting qualified physicians as part of her duties to Urban Zen." Specialized knowledge can impart a fiduciary duty where a party (1) has superior knowledge, (2) that is not available to the other party by reasonable inquiry, and (3) the first party knows that the second party is acting on the basis of mistaken knowledge. See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 582 (2d Cir. 2005); see also Jana L. v. West 129th Street Realty Corp., 22 A.D.3d 274, 278, 802 N.Y.S.2d 132 (1st Dep't 2005) (holding that the "special facts" doctrine requires that the information be "peculiarly within the knowledge" of the defendant and not discoverable by the plaintiff through the "exercise of ordinary intelligence"). The Amended Complaint states that "Karan Weiss knew or should have known about Robbins' lack of credentials," "Karan Weiss and others who were acting for Urban Zen intentionally led Naughright to believe that Robbins was credentialed" and "Karan Weiss knew or should have known the information was incorrect because she was in the position of recruiting qualified physicians as part of her duties to Urban Zen." These conclusory statements are insufficient to establish that the Karan Defendants were in possession of superior knowledge about Robbins' qualifications and that this information was not discoverable by Naughright.

15

In addition to failing to provide the requisite
special relationship, the Amended Complaint also neglects to
assert sufficient facts to establish reasonable reliance.  The
Amended Complaint alleges that Naughright's reliance on the
Karan Defendants' representations regarding Robbins'
qualifications was reasonable because Karan "occupied a special
position of confidence and trust" with Naughright and that
because Naughright "relied on Karan Weiss to select and screen
the health care providers who would fulfill the criteria for
accreditation, Naughright did not question Robbins' legitimacy
as a physician."  Under New York law, "[l]iability for negligent
misrepresentation is imposed 'only on those persons who possess
unique or specialized expertise, or who are in a special
position of confidence and trust with the injured party such
that reliance on the negligent misrepresentation is justified.'"
Watson v. Riptide Worldwide, Inc., No. 11 Civ. 0874(PAC), 2012
WL 383946, at *4 (S.D.N.Y. Feb. 7, 2012) (citing Kimmel v.
Schaefer, 89 N.Y.2d 257, 263, 652 N.Y.S.2d 715, 675 N.E.2d 450
(1996)); see also Gray v. Wackenhut Servs., Inc., 721 F. Supp.
2d 282, 292 (S.D.N.Y. 2010) ("[I]f the facts represented are not
matters peculiarly within the party's knowledge, and the other
party has the means available to him of knowing, by the exercise
of ordinary intelligence, the truth, or the real quality of the

16

subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.") (quoting Schumaker v. Mather, 133 N.Y. 590, 596, 30 N.E. 755 (1892)).  Here, the Amended Complaint alleges no facts to suggest that information about the true nature of Robbins' qualifications was "peculiarly within" the Karan Defendants' knowledge and could not be discovered by Naughright's "exercise of ordinary intelligence." Because the Amended Complaint fails to establish either a special relationship between the Karan Defendants and Naughright or reasonable reliance, the first cause of action alleging negligent misrepresentation against the Karan Defendants is dismissed.[2]


        Because this is the Plaintiff's second effort to state a viable claim against the Karan Defendants, the Amended Complaint with respect to the first cause of action is dismissed with prejudice without leave to replead.  Rozsa v. May Davis

---

[2]    In addition to seeking dismissal of the Amended Complaint with respect to all Defendants for failure to state a claim upon which relief can be granted, the Karan Defendants have moved to dismiss the Amended Complaint against the Karan Defendants for lack of subject matter jurisdiction.  The Karan Defendants contend that because Naughright's underlying theory of liability stems from her alleged employment, her claims are barred by the exclusivity provision of New York's Workers' Compensation Law. Because the Amended Complaint is dismissed with respect to the Karan Defendants, this opinion does not reach the merits of this argument.

Grp., Inc., 187 F. Supp. 2d 123, 132 (S.D.N.Y. 2002) (citing

Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).

## B. The Negligence Claim Against Robbins Are Not Dismissed

The Amended Complaint's second cause of action alleges

negligence against Robbins.  To establish a negligence cause of

action, a plaintiff must demonstrate (1) the existence of a duty

on the defendant's part to the plaintiff; (2) a breach of that

duty and (3) injury to the plaintiff as a result thereof.  See

Valentini v. Citigroup, Inc., No. 11 Civ. 1355(LBS), 2011 WL

6780915, at *18 (S.D.N.Y. Dec. 27, 2011) (citing Akins v. Glens

Falls City Sch. Dist., 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 424

N.E.2d 531 (1981)).

"[T]he concept of a duty of care, which is essential

to the law of negligence, has meaning only when considered in

relation to both the harm that the duty exists to prevent and

the class of individuals to whom it is owed."  Waters v. N.Y.

City Housing Auth., 69 N.Y.2d 225, 228-29, 513 N.Y.S.2d 356, 505

N.E.2d 992 (1987).  "The risk reasonably to be perceived defines

the duty to be obeyed, and risk imports relation; it is risk to

another or to others within the range of apprehension that

delimits the duty's scope."  Id. at 229 (quoting Palsgraf v.

18

Long Is. R.R. Co., 248 N.Y. 339, 344, 162 N.E. 99 (1928)). "A
client to whom services are rendered has standing to sue a
professional for negligence in performance of his duties."
Wainwright v. Matrix Asset Advisors, Inc., No. 05 CIV 227DLC,
2004 WL 3418933, at *2 (S.D.N.Y. July 27, 2004).  Although
Robbins is not the typical professional encountered in
negligence cases, such as a physician, attorney, architect or
engineer, the Amended Complaint alleges that Robbins held
himself out as an expert in his trade and touted his
affiliations with UCLA Medical Center, USC Medical Center and
the Los Angeles Police Department.  See William Wrigley Jr. Co.
v. Waters, 890 F.2d 594, 602-03 (2d Cir. 1989) (trademark
registration agents holding themselves out as experts were
liable as a matter of law in tort for breaching their duty of
care).  Accordingly, the Amended Complaint has adequately
alleged that a duty of care existed between Robbins and
Naughright.  The Amended Complaint's description of Robbins'
conduct and the harm Naughright has suffered provide sufficient
facts when, accepted as true, establish the remaining elements
for a negligence cause of action, nudging the Plaintiff's claims
across the line from conceivable to plausible.  Twombly, 550
U.S. at 570.  Accordingly, the Amended Complaint's negligence
cause of action against Robbins is not dismissed.

19

## C. The Fraud Claim Against Robbins Is Dismissed In Part

The Amended Complaint's third cause of action alleges fraud against Robbins.  To state a viable cause of action for fraud under New York law, a plaintiff must allege (1) a misrepresentation of material fact, (2) the falsity of the representation, (3) knowledge by the party making the representation that it was false when made, (4) justifiable reliance by the plaintiff and (5) resulting injury.  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 291 (2d Cir. 2006) (citing Kaufman v. Cohen, 307 A.D.2d 113, 119, 760 N.Y.S.2d 157 (1st Dep't 2003)).  Under Fed. R. Civ. P. 9(b), the circumstances constituting the alleged fraud must be stated with particularity.  See Mills, 12 F.3d at 1175.  The Amended Complaint pleads fraud on account of three of Robbins' statements: (1) statements made during Robbins' November 7, 2009 presentation in which he represented that he was affiliated with UCLA and USC Medical Centers; (2) statements made on November 7, 2009 in which Robbins stated that he could cure Naughright; and (3) statements that Robbins made representing that he was affiliated as a medical doctor with the LAPD.  The Amended Complaint alleges that all three of these representations were false.

20

To satisfy Rule 9(b), a plaintiff should specify the time, place, speaker and content of the alleged misrepresentations. Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986). The complaint should explain how the misrepresentations were fraudulent and "plead those events which give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." Connecticut Nat'l Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir. 1987). With respect to the Amended Complaint's allegations concerning Robbins' statements that he could cure Naughright and that he was affiliated as a medical doctor with the LAPD, the Amended Complaint does not provide sufficient information concerning the time and place of these alleged statements to satisfy the pleading requirements of Rule 9(b). Accordingly, any fraud claim premised on these two statements is dismissed.

However, with respect to Robbins' statement that he was associated with UCLA and USC, the Amended Complaint specifies the time (November 7, 2009), place (UZIT lunch event), speaker (Robbins) and content ("Robbins stated that he was associated with the UCLA Medical Center and USC Medical Center"). The Amended Complaint also alleges that this statement was false, and the substance of the alleged statement

21

gives rise to a strong inference that Robbins had knowledge of the falsity.  The Amended Complaint pleads Naughright's reliance on Robbins' assertions concerning his affiliation with UCLA and USC and, as a result of that reliance, her decision to submit to the treatment that allegedly caused her injuries.  As such, the Amended Complaint pleads a valid cause of action for fraud with respect to Robbins' November 7, 2009 statement that he was affiliated with UCLA and USC Medical Centers.

### D. The Medical Malpractice Claim Against Robbins Is Not Dismissed

The fourth cause of action in the Amended Complaint alleges medical malpractice against Robbins.  "In order to make out a prima facie case for medical malpractice, plaintiff must allege that (1) the physician owed a duty of care to the plaintiff; (2) the physician breached that duty by deviating from accepted medical practice; and (3) the alleged deviation proximately caused plaintiff's injuries."  Banks v. United States, No. 10 Civ. 6613(GBD)(GWG), 2011 WL 4100454, at *16 (S.D.N.Y. Sept. 15, 2011) (citing Lorenz v. Managing Dir., St. Luke's Hosp., No. 09 Civ. 8898(DAB)(JCF), 2010 WL 4922267, at *11 (S.D.N.Y. Nov. 5, 2010)).

22

"[T]he distinction between medical malpractice and negligence is a subtle one, for medical malpractice is but a species of negligence and 'no rigid analytical line separates the two'." Weiner v. Lenox Hill Hosp., 88 N.Y.2d 784, 787, 650 N.Y.S.2d 629, 673 N.E.2d 914 (1996) (quoting Scott v. Uljanov, 74 N.Y.2d 673, 674, 543 N.Y.S.2d 369, 541 N.E.2d 398 (1989)). The Court of Appeals has held that "a claim sounds in medical malpractice when the challenged conduct 'constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician'." Id. (quoting Bleiler v. Bodnar, 65 N.Y.2d 65, 73, 489 N.Y.S.2d 885, 479 N.E.2d 230 (1985)). Other tests used by New York courts include whether the acts and omissions complained of involved a matter of medical science or art requiring special skills not ordinarily possessed by lay persons, Matter of Barresi v. State of N.Y., 232 A.D.2d 962, 963, 649, N.Y.S.2d 207 (3d Dep't 1996), and whether expert testimony will be required to establish a deviation from the standard of care, Perkins v. Kearney, 155 A.D.2d 191, 192-93, 553 N.Y.S.2d 552 (3d Dep't 1990).

The phrase "medical malpractice" in CPLR § 214-a is not limited to physicians and extends beyond conduct that falls within the definition of the "practice of medicine" found in N.Y. Educ. Law § 6521. See Bleiler, 65 N.Y.2d at 70; Barresi,

23

232 A.D.2d at 963-64. Because there is no requirement that Robbins' be an actual physician and because Robbins' acts, as alleged in the Amended Complaint, involved a matter of medical science or art requiring special skills not ordinarily possessed by lay persons, a medical malpractice cause of action is appropriate in this case.

According to Robbins, the Plaintiff's cause of action for medical malpractice should be dismissed because the Amended Complaint fails to allege the necessary elements. Additionally, Robbins contends that CPLR § 3012-a requires that any complaint in a medical malpractice action be accompanied with a certificate of merit attesting to the matter being reviewed by a healthcare professional and the attorney on behalf of the litigant concluding that there is a reasonable basis to proceed. Robbins' second argument can be quickly dispensed with, as CPLR § 3012-a(f) establishes that "[t]he provisions of this section shall not be applicable to a plaintiff who is not represented by an attorney." Because Naughright is proceeding pro se, CPLR § 3012-a cannot be employed to preclude her claim of medical malpractice.

Turning to the elements of a malpractice action under New York law, it must be remembered that "to survive a motion to

24

dismiss, even a <u>pro se</u> plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" <u>Johnson v. City of N.Y.</u>, 669 F. Supp. 2d 444, 448 (S.D.N.Y. 2009) (quoting <u>Twombly</u>, 550 U.S. at 570). However, a court may grant a motion to dismiss under Rule 12(b)(6) only if "'it appears beyond doubt that the plaintiff can prove no set of facts to support his claim which would entitle him to relief.'" <u>Kwan v. Schlein</u>, 441 F. Supp. 2d 491, 498 (S.D.N.Y. 2006) (quoting <u>Drake v. Delta Air Lines, Inc.</u>, 147 F.3d 169, 171 (2d Cir. 2008)). When all reasonable inferences are drawn in favor of Naughright, the Amended Complaint has pled sufficient facts to state a claim for relief that is plausible on its face. Accordingly, the motion to dismiss the fourth cause of action for medical malpractice is denied.

## E. The Battery Claim Against Robbins Is Not Dismissed

"The elements of a cause of action [to recover damages] for battery are bodily contact, made with intent, and offensive in nature." <u>Siegell v. Herricks Union Free Sch. Dist.</u>, 7 A.D.3d 607, 609, 777 N.Y.S.2d 148 (2d Dep't 2004) (internal citations omitted, bracketed text in original). In his motion to dismiss, Robbins presents two arguments for

25

dismissing the Plaintiff's battery claim: first, the facts in the Amended Complaint contradict the original complaint and should be disregarded; and, second, the Amended Complaint was filed after the one year statute of limitations for intentional torts.  With respect to the first contention, Robbins notes that when a "plaintiff blatantly changes his statement of the facts in order to respond to the defendants' motion to dismiss," a court "accepts the facts as described in the original complaint as true[.]"  Wallace v. N.Y. City Dep't of Corr., No. 95 CV 4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996).  Naughright's original complaint, as noted by the court in its opinion filed November 18, 2011, stated that "Naughright allowed Stephen M. Robbins to touch her person in the bedroom of Donna Karan Weiss."  The Amended Complaint alleges that Robbins failed to obtain Naughright's consent before placing his ungloved hand into the Plaintiff's mouth and forcibly twisting and pulling on Naughright's head.  These recitations of fact are not necessarily mutually exclusive: while Naughright may have initially permitted Robbins to touch her person, Robbins conduct in placing his hand in Naughright's mouth or moving her head may have exceeded the scope of Naughright's consent.  The factual differences between the initial complaint and Amended Complaint are insufficient to warrant dismissal of the battery claim.

26

With respect to Robbins' statute of limitations argument, "[w]here the original complaint was filed within the statute of limitations, an amended complaint 'relates back' to the date of the original pleading when: (1) the law that provides the statute of limitations allows relation back; (2) the amendment asserts a claim or defense that arose out of the conduct in the original pleading; or (3) the amendment changes the party or the naming of the party against whom a claim is asserted." Rochester v. Sixth Precinct Police Station, 370 Fed. Appx. 244, 245 (2d Cir. 2010). Because Naughright's battery cause of action relates back to the second cause of action in her original complaint, the Amended Complaint is considered to have been filed on November 8, 2010, within the one year statute of limitations for intentional torts.

## F. The Failure To Obtain Consent Claim Against Robbins Is Not Dismissed

A cause of action for failure to obtain consent under New York law is statutory and "means the failure of the person providing the professional treatment or diagnosis to disclose to the patient such alternatives thereto and the reasonably foreseeable risks and benefits involved as a reasonable medical, dental or podiatric practitioner under similar circumstances

27

would have disclosed, in a manner permitting the patient to make

a knowledgeable evaluation."  N.Y. Pub. Health Law § 2805-d(1).

"It must also be established that a reasonably prudent patient

would not have undergone the treatment if fully informed and

that the lack of informed consent was a proximate cause of the

injury."  Pagan v. State, 124 Misc.2d 366, 367, 476 N.Y.S.2d 468

(N.Y. Ct. Cl. 1984) (citing N.Y. Pub. Health Law § 2805-d).


        Robbins contends that the Amended Complaint lacks the

factual allegations necessary to support a claim under N.Y. Pub.

Health Law § 2805-d.  The Amended Complaint states:


    When Naughright arrived, Karan Weiss came out of a bedroom
    and greeted Naughright and raved about what a phenomenal
    and outstanding healer Robbins was and said that Naughright
    had to be treated by him.  Karan Weiss led Naughright into
    her bedroom where a massage table was set up.  Then she
    left the room and Naughright was alone with Robbins and his
    wife.  Robbins and Naughright spoke briefly then Robbins
    instructed her to lie on the massage table.

    Robbins did not ask for any medical background from
    Naughright and did not seek consent.  No consent forms or
    waiver forms were provided, which were usually required by
    Karan Weiss's attorney.  Naughright expected healing touch
    or Reiki as well as verbal feedback on her structural
    alignment.

    Instead, without warning, Robbins applied traction to
    Naughright's neck, followed by violent shaking of her head
    repeatedly from side to side.  He then held her forehead
    down and pulled on her jaw.  He forced his ungloved hand
    adorned by a large ring inside Naughright's mouth and then
    violently shook her head.  He undertook these actions
    without warning or obtaining consent from her.  While his

28

hand was in Naughright's mouth, Robbins told her that she
needed to "let go" because she had control issues.  After
that, he offered to massage her breasts and declared that
the left one was dead.  Robbins suggested that Naughright
needed a "vagina release" procedure.  She refused these
additional "treatments."

These facts allege that Robbins did not disclose to Naughright

alternative treatments or the reasonably foreseeable risks and

benefits involved.  Accordingly, the Amended Complaint has pled

sufficient facts to sustain a cause of action under N.Y. Pub.

Health Law § 2805-d.

**Conclusion**

Based on the conclusions set forth above, the

Defendants' motions to dismiss are granted in part and denied in

part.

It is so ordered.

New York, NY
March 7 , 2012

ROBERT W. SWEET
U.S.D.J.

29